**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: August 30 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-31798 |
| | ) | |
| Paul Alan Crow and Patricia Darlene Crow | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | Adv. Pro. No. 13-3012 |
| | ) | |
| Paul Alan Crow and Patricia Darlene Crow, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ocwen Loan Servicing, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
GRANTING MOTION FOR DEFAULT JUDGMENT**

   Now before the court is the Amended Motion for Default Judgment ("Motion") filed by the Plaintiffs, Paul and Patricia Crow. [Doc. # 12]. The complaint filed by Plaintiffs, commencing this adversary proceeding, is for "Violation of Automatic Stay and Prior Court Order." [Doc. #1]. A default was entered by the clerk against the Defendant pursuant to Bankruptcy Rule 7055. [Doc. # 7]. The clerk's entry of default has not ben set aside or requested to be set aside.

The Plaintiffs, thereafter, filed their Amended Motion for Default Judgment, seeking therein an award of damages and other equitable relief. On April 30, 2013, the court held an evidentiary hearing on the Motion. [Doc. # 13]. Appearing at the hearing were the Plaintiffs, individually, and Randy Reeves as Attorney for the Plaintiffs. No representative on behalf of the Defendant appeared before the court. The matters giving rise to the Plaintiffs' Motion, both procedurally and factually, are set forth below, with the following constituting this court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

## FACTUAL BACKGROUND

On April 14, 2008, the Plaintiffs filed a petition in this court for relief under Chapter 13 of the United States Bankruptcy Code, Case No. 08-31798. In their bankruptcy schedules, Plaintiff Paul Crow disclosed a fee interest in real property located in Lima, Ohio that the Plaintiffs both use as their residence. The value of the property was listed at $110,000.00. Saxon Mortgage Company was set forth as holding the first mortgage on this property, with Mr. Crow being the sole party liable on the mortgage note.[1]

For the mortgage obligation, the Saxon Mortgage Company filed a proof of claim that was later amended. (Cl. # 6-2). In its amended claim, the Saxon Mortgage Company set forth that it was owed the sum of $146,268.97, and that its claim was secured by the Plaintiffs' residence. The Saxon Mortgage Company further set forth that the amount of arrearages and other charges included in its secured claim totaled $16,605.44. According to the proof of claim, the name of the creditor to whom the Plaintiffs actually owed money was the "Wells Fargo Bank National Association, as Trustee." Mr. Crow did not file an objection to the proof of claim.[2]

---

[1] Mrs. Crow is also a Plaintiff. She lives in the home owned by her husband, but has otherwise not shown any interest in the claims set forth. While she might arguably be entitled to damages for emotional distress from Defendant's actions, the court has otherwise determined that such an award is inappropriate in this case. The final judgment described below will be entered only in Mr. Crow's favor. Judgment will be entered in Defendant's favor on the Complaint with respect to Mrs. Crow.

[2] The United States Trustee did file an objection to the proof of claim. (Doc. # 153 & 154). The objection of the United States Trustee concerned an overcharge in the proof of claim for court costs in the amount of $79.50. This matter was subsequently resolved by an agreed order entered on March 14, 2012, wherein the Saxon Mortgage Company agreed to file an amendment to its proof of claim to reflect the proper court costs. (Doc. # 159). Pursuant to the agreed order, the Saxon Mortgage Company filed its amended proof of claim on March 13, 2012. (Cl. # 6-3).

On August 21, 2008, the court entered an order confirming the Plaintiffs' Chapter 13 plan of reorganization, as amended. For purposes of § 1325(a), the mortgage claim of Saxon Mortgage Company was "provided for" by the Debtors' plan. The terms of the Plaintiffs' confirmed Chapter 13 plan provided, *inter alia*: "During this Chapter 13 case, the debtor(s) will attempt to enter into loss mitigation negotiations with their mortgage lender(s). This may result in an agreed modification of the debtor(s) mortgage(s)." Pursuant to this clause, the Plaintiffs subsequently filed, with Wells Fargo Bank National Association, a motion for the modification of the mortgage loan. (Doc. # 14, Ex. A).

In the proposed modification, it was set forth that the original principal balance of the mortgage loan was $133,000.00, but that the new principal balance would be set at $128,551.98, to be paid over 294 months. Effective until January of 2015, the interest rate on the new principal balance was to be revised downward from 7.625% to 2.875%, after which time it would revert to the old rate. It was further provided that the Debtors would make a one-time, lump-sum payment of $4,308.80 to Wells Fargo Bank, causing a corresponding reduction on the Debtors' mortgage arrears. The remaining mortgage arrears, revised to $18,376.59, were then to be deferred at 0% interest, with a balloon due on the maturity date of June 1, 2034. Based on these proposed modifications, the amortization of the mortgage loan was adjusted so that, effective for January 2010, the Debtors' post-petition mortgage payment for their residence would be $966.15 per month, consisting of a principal and interest payment of $609.67 and an escrow payment of $356.48 to be allocated for accruing taxes and insurance.[3]

On December 18, 2009, the court entered an order approving the motion to modify the home-mortgage loan held by Wells Fargo Bank. In this order, it was set forth: "As the modification fully accounts for all arrears through and including December 2009, the Trustee shall cease making any further disbursements on the pre-petition arrearage claim filed and by Movant and amended at claim 6-2." (Doc. # 14, Ex. B).

Plaintiff Patricia Crow testified that she and her husband fully have fully complied with the terms of the court's modification order. To begin with, according to Mrs. Crow, a check was promptly tendered

---

[3]The total monthly payment was subsequently reduced to $954.43.

3

13-03012-maw    Doc 16    FILED 08/30/13    ENTERED 08/30/13 16:46:39    Page 3 of 16

to Wells Fargo Bank for the sum of $4,308.80 as required under the terms of the mortgage modification. Mrs. Crow, also testified that, since the modification order was entered by the court, all periodic payments required under the terms of the modification have been made.

Although neither of these testimonial statements was fully supported by documents admitted into evidence, the court finds the statements made by Mrs. Crow to be credible. Of note, accounting statements that were introduced into evidence show that the requisite payments were made on the mortgage loan in 2012 and 2013. (Doc. # 14, Ex. D). The statements of Mrs. Crow are furthermore supported by the absence of any action reflected on the docket which would belie her testimony – *e.g.*, a motion for relief from stay by the Creditor or a motion to dismiss brought by the Trustee.

In 2012, the sole Defendant in this proceeding, Ocwen Loan Servicing, LLC, became the servicing agent for Mr. Crow's mortgage account.[4] Beginning in April of 2012, the Defendant started to send account statements to Mr. Crow regarding the mortgage loan on the Plaintiffs' home. Much of the information contained in these statements, however, was inconsistent with the terms of the mortgage modification order entered by the court. (Doc. # 14, Ex. D).

Among the substantive discrepancies contained in the Defendant's account statements: (1) the assessment of a post-petition interest rate of 7.625%; (2) a large post-petition arrears; and (3) a large escrow deficiency. For example, the first account statement sent by the Defendant in April 2012, showed a post-petition arrears of $25,809.09 and an escrow deficiency of $3,825.14. For the escrow arrears, Plaintiffs called attention to the fact that a prior escrow statement, sent to Mr. Crow in September of 2011 by the Saxon Mortgage Company, showed an escrow surplus of $1,504.33. (Doc. # 14, Ex. C).

After receiving the April account statement, the Plaintiffs, as well as the Plaintiffs' attorney, attempted to contact the Defendant on a number of occasions to rectify the matter. These efforts, however, proved unsuccessful, with the subsequent account statements sent by the Defendant continuing to reflect the above inconsistencies. Moreover, the inconsistencies increased in scope, with the ensuing monthly

---

[4]On December 9, 2012, the Defendant filed in the Plaintiffs' bankruptcy case a notice of transfer of claim pursuant to Bankruptcy Rule 3001(e)(2). In this notice, the Saxon Mortgage Company was set forth as the assignor, while the assignee was set forth as "Wells Fargo Bank, N.A. C/O Ocwen Loan Servicing, LLC." (Doc. # 161).

account statements sent by the Defendant setting forth an ever increasing deficiency for the account's principal and escrow balances, so that by April of 2013, the Defendant claimed a deficiency of $28,314.38 for post-petition principal and a deficiency of $4,713.64 for the escrow account. Once more, this increase in the scope of the deficiencies occurred notwithstanding the fact that the account statements sent by the Defendant showed that the Plaintiffs had been making their required monthly payment in accord with this court's modification order. (Doc. # 14, Ex. D).

On January 30, 2013, the Plaintiffs commenced this adversary proceeding, averring a violation of the automatic stay of 11 U.S.C. § 362, as well as a violation of this court's order approving the loan modification. The following day, the clerk issued a Summons and Notice of Pre-Trial Conference in which it was provided that an answer was due by March 4, 2013, and that a pre-trial conference would be held on March 19, 2013. [Doc. # 2]. On February 7, 2013, Plaintiffs' attorney filed the certificate of service regarding the summons and notice of pre-trial conference. [Doc. # 3]. Therein, Plaintiffs' attorney certified that on February 6, he served, by certified mail, the Defendant and two individually named members of the Defendant's board of directors at the address of the Defendant's corporate headquarters.

On the scheduled date, the court held the pre-trial conference in this proceeding. Only the Plaintiffs' attorney appeared at the conference. At the time of the conference, no response to the Plaintiffs' complaint had been received from the Defendant. Based upon the lack of any appearance on the part of the Defendant, the court directed Plaintiffs' attorney to file a motion for default judgment. [Doc. # 5]. At the pre-trial, the court further directed that, upon the Plaintiffs filing a motion for default judgment, this matter would be set for hearing to adjudicate liability and to assess damages. Consistent with this directive, the Plaintiffs' filed their Motion for default judgment, with the court thereafter holding the evidentiary hearing on the Motion.

## LAW AND ANALYSIS

The district court has jurisdiction over Plaintiffs' underlying Chapter 7 bankruptcy case and this adversary proceeding as a civil proceeding arising under Title 11. 28 U.S.C. § 1334(a), (b). Plaintiffs' Chapter 7 case and all proceedings arising under Title 11 or related to a case under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This matter is a core proceeding

that this court may hear and determine because it involves enforcement of the automatic stay pursuant to a statutory cause of action stated in 11 U.S.C. § 362(k). 28 U.S.C. § 157(b)(2)(G) and (O).

On the Plaintiffs' Motion, two matters are before the Court: liability and damages. On the first issue, the court begins by observing that the clerk has entered a default against the Defendant, as is provided for in Rule 55(a),[5] based on the Defendant's failure to plead or otherwise defend in this proceeding. Notwithstanding the entry of a default by the clerk, Rule 55(b)(2) of the Federal Rules of Civil Procedure confers upon the court the authority to formally adjudicate the issue of a non-responsive party's liability based upon the record and evidence before the court. *MBNA America Bank, N.A. v. Hostetter*, 320 B.R. 674, 679 (Bankr. N.D. Ind.2005).

Courts generally approach default judgments cautiously, with such judgments being disfavored by the law as they go contrary to the strong policy of deciding cases on the merits. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Consequently, merely because a defendant has not answered or otherwise responded to a complaint, does not entitle a plaintiff to a default judgment.[6] Instead, a court is afforded broad discretion in determining whether the entry of a judgment by default is proper. *See Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993) ("Because the Court has discretion, a party making a request may not be entitled to default judgment as a matter of right even when the defendant is technically in default and that fact has been noticed under Rule 55(a).").

In exercising its discretion, a court should review the record to ensure that procedural prerequisites, particularly adequate service of process, have been met. *Brown v. Wachovia Bank*, 244 F.R.D. 16, 20 (D.D.C. 2007); *PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). As applied to this case, the court has now examined the record before it. Based upon this examination –

---

[5] Made applicable to this proceeding by Bankruptcy Rule 7055.

[6] For example, as explained in *Penpower Technology Ltd. v. S.P.C. Technology*:

> After entry of default, the Court may enter a default judgment. However, entry of default does not automatically entitle the non-defaulting party to entry of a default judgment regardless of the fact that the effect of entry of a default is to deem allegations admitted. Rather, the decision to enter a default judgment is discretionary. First, the Court must assess the adequacy of service of process on the party against whom default is requested.

627 F.Supp.2d 1083, 1088 (N.D. Cal.2008) (internal citations and quotations omitted)

6

particularly, with respect to service of process – the court is persuaded that the entry of a default judgment is appropriate in this adversary proceeding.

The matter before the court is an adversary proceeding. FED.R.BANKR.P. 7001(7). In an adversary proceeding, service of process on a defendant is governed by Bankruptcy Rule 7004. Under this Rule, service on a defendant within the United States may be accomplished by servicing the complaint and summons on the defendant "by first class mail postage prepaid . . . ." FED.R.BANKR.P. 7004(b). This is the method used by the Plaintiffs to effectuate their service on the Defendant.

The Defendant in this case is a corporate entity. When the mail is used to accomplish service on a corporate defendant, Bankruptcy Rule 7004(b)(3) then details how the corporation is to be served, providing:

> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Thus, pursuant to this Rule, service by mail on a domestic corporation must be addressed to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service or process; moreover, if the agent is authorized by statute to receive service and the statute requires, then a copy must also be mailed to the defendant.

In this case, the Plaintiffs' certificate of service provides that not only was the Defendant served, but that two individually named members of the Defendant's board of directors were served at the Defendant's corporate headquarters. Based on this certification, the court cannot discern any service defect under Bankruptcy Rule 7004(b)(3). For this purpose, a couple of points stand out.

First, Bankruptcy Rule 7004(b)(3) requires that notice must be mailed "to the attention of" at least one of the classes of agents specified in the Rule. This nomenclature – "to the attention of" – generally requires that, as occurred in this proceeding, the addressee of the notice be named to a person individually, as opposed to the use of a generic addressee such as "to the attention of any corporate officer." *Saucier v. Capitol One (In re Saucier)*, 366 B.R. 780, 784 (Bankr. N.D. Ohio 2007). Second, for purposes of Rule

7004(b)(3), a corporation's board of directors, to whom notices in the proceeding were sent, can be assumed to be agents authorized by law to accept service of process on behalf of the corporation.

The effect of the entry of a default judgment by the court is to establish liability on the part of the defaulting party. 10 Moore's Federal Practice § 55.32[1][a] (3d. ed. 2007). To this end, the well-pleaded facts in the complaint relating to liability are taken as true. *Id*. In this matter, the Plaintiffs averred in their complaint that the Defendant, by repeatedly sending its inaccurate accounts statements, violated the automatic stay of § 362(a) as well as this court's loan modification approval order. Therefore, on these matters, liability on the part of the Defendant is established.

Having determined liability, the second of the issues before the Court concerns the Plaintiffs' damages. In their complaint, the Plaintiffs asked that they be accorded this relief: "to find Defendants in contempt; for an injunction against Defendants, jointly and severally, prohibiting any further acts in violation of the automatic stay and the prior Court Order, for an accounting; reasonable amount for attorney fees; punitive damages in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00); and any other relief the Court deems just and equitable." [Doc. #1].

At the hearing held on their Motion, Plaintiffs' legal counsel, upon inquiry by the court, clarified that they were seeking relief as follows: (1) the assessment of statutory damages against the Defendant pursuant to § 11 U.S.C. 362(k); (2) fixing the balance of the current mortgage note at $115,000.00; (3) finding that the Plaintiffs' escrow account is current and requiring the Defendant to provide a new statement of the escrow balance on a forward going basis; and (4) the entry of an order from the court, requiring the Defendant to comply with this court's order of modification and to apply all future payments in accordance with the modification order. The court finds that the relief requested, and awarded below, does not differ in kind from or exceed in amount what is supported by and demanded in the complaint, which as set forth above includes demand for an accounting, for reasonable attorney's fees, for punitive damages of $50,000 and other equitable relief. *See* FED. R. BANKR. P. 7054; FED. R. CIV. P. 54(c).

**Statutory damages**

Pursuant to § 362(a) of the Bankruptcy Code, an automatic stay arises upon the commencement of

a bankruptcy case. The stay arises as a matter of law; no formal notice or service of process is required for the stay to have effect. 11 U.S.C. § 362(a); *Smith v. First America Bank*, N.A., 876 F.2d 524, 526 (6th Cir. 1989). In § 362(a), it is provided that the stay is "applicable to all entities." Hence, it is beyond question that the stay applies to an entity, such as the Defendant, who services a debtor's loan. *See* § 101(15) (defining entity to include a "person"); 11 U.S.C. § 101(41) (defining a "person" to include "corporation").

A creditor found to have willfully violated the stay is subject to an assessment of damages. As set forth in § 362(k)(1):

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

For purposes of this provision, this court, in following the overwhelming weight of authority, has embraced a broad construction of the term "willful," holding the term simply means that "a party acts deliberately with knowledge of the debtor's bankruptcy petition." *Cox v. PNC Fin. Group, Inc. (In re Cox)*, Case No. 10-3191, Ch. 7 (Oct. 2010), available at https://www.ohnb.uscourts.gov/. No specific intent to violate the stay is required.

In this matter, the Defendant's stay violation may be deemed to be "willful" within the meaning of § 362(k)(1). As stated, when a default judgment is entered, the well-pleaded facts in the complaint relating to liability are taken as true. In this case, the Plaintiffs alleged in their complaint that the Defendant's violation of the stay was "blatant," a word which connotes a "willful" act within the meaning of § 362(k)(1), thereby placing the Defendant on notice that it could be subject to an assessment of damages under this provision. (Doc. # 1). The issue before the court, thus, becomes the amount of statutory damages to which the Plaintiffs are entitled.

Relying on § 362(k)(1), the Plaintiffs seek three forms of statutory damages: actual damages, attorney fees and punitive damages. As provided in § 362(k)(1), an assessment of actual damages, including attorney fees, is mandatory when a willful stay violation is determined to exist. For punitive damages, however, such an assessment is placed within the discretion of the court.

9

The first form of statutory damages sought by the Plaintiffs, actual damage, may be defined as: "An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY 394 (7th ed. 1999). As to the Plaintiffs individually, the only assertion made of actual damages concerned emotional distress. In particular, both of the Plaintiffs testified that they suffered angst over the prospect of losing their home.

Under § 362(k)(1), however, damages are not normally allowed for emotional distress. *United States v. Harchar*, 331 B.R. 720, 733 (N.D. Ohio 2005) (J. Wells) (holding that emotional damages are not compensable under § 362(h), now codified in § 362(k)(1)). This tenet is partially premised on the speculative nature of emotional distress damages. *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 824 (Bankr. N.D. Ohio 2010) ("Given the ease in which they can be manufactured, claims for damages based purely on emotional distress are not favored in the law."). This concern is particularly true in the situation before the court where there is no medical evidence to substantiate the claim. Accordingly, the court declines to enter an award of damages in the Plaintiffs' favor based solely on their bare and limited testimony that they were upset as the result of the Defendant's actions. The attorney's fees incurred by the Plaintiffs, however, are another matter.

Section 362(k)(1) specifically contemplates that attorney's fees will be awarded to a debtor where, as has been determined here, a willful stay violation has occurred. On the issue of attorney's fees, Plaintiffs testified that, in an effort to rectify the matter with the Defendant, they were required to obtain the services of their attorney, Randy Reeves. Testimony was also given to the effect that, notwithstanding the disposition of this matter, the Plaintiffs will be personally obligated to pay Attorney Reeves for his services.

In the court's view, the retention of Attorney Reeves is a reasonable course of action given the breadth of the Defendant's misconduct. For a period of approximately one year, the Defendant sent monthly account statements to the Plaintiffs that not only violated the automatic stay, but which were inconsistent with this court's loan modification approval order. Moreover, Attorney Reeves acted as the Plaintiffs' attorney in commencing this bankruptcy case and getting their plan confirmed. Thus, it was natural that the Plaintiffs would seek to utilize, in an effort to rectify their difficulties with the Defendant, the legal services of Attorney Reeves. Accordingly, given these circumstances, the Plaintiffs are entitled to an award of attorney's fees.

In an itemized billing statement submitted to the court, Attorney Reeves set forth $3,642.40 in legal fees to be charged to the Plaintiffs. [Doc. # 15]. These fees were based upon 15.9 hours of work, charged at an hourly rate of $235.00, with a reduction charged for some services such as that for travel time. The legal fees charged by Attorney Reeves generally fall into two areas: (1) the costs directly connected with this adversary proceeding; and (2) the costs assessed prior to the commencement of this proceeding whereby Attorney Reeves undertook to rectify the dispute with the Defendant without court action.

Under § 362(k)(1), any award of attorney fees must be "reasonable." *In re Webb*, 472 B.R. 665 (table), 2012 WL 2329051, at * 16 (B.A.P. 6th Cir. 2012). Generally, the reasonableness of an attorney's fees in a bankruptcy case is assessed by using the lodestar method. *Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334, 337 (6th Cir. 1991). The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id*.

In applying the lodestar method, the court has no difficulty in allowing Attorney Reeves to charge an hourly rate of $235.00 for his services. Attorney Reeves is an experienced bankruptcy practitioner, having represented hundreds of debtors before this court. The 15.9 hours Attorney Reeves spent on this case, while seeming large where there has been a default, also appears reasonable given the circumstances of this particular case.

One, of the 15.9 hours Attorney Reeves devoted to the Plaintiffs' case, eight hours were spent on this adversary proceeding. This amount of time is well within the bounds of reasonableness, especially when it is considered that, inclusive of travel time, four and half hours of his services related to the default hearing. Similarly, the court can find no fault with the approximately eight hours spent by Attorney Reeves handling the Plaintiffs' matter with the Defendant prior to the commencement of this adversary proceeding.

For this purpose, the billing statement submitted to the court shows that from September of 2011 to November of 2012, Attorney Reeves, as would be expected, had multiple contacts with the Plaintiffs regarding the Defendant's conduct. During this time, Attorney Reeves also attempted to make contact with the Defendant to rectify the problem. Thus, over an extended period of time, Attorney Reeves attempted to resolve this matter informally, without the need for court intervention. This type of conduct is to be encouraged. *See In re Harris*, 374 B.R. 611, 617 (Bankr. N.D.Ohio 2007) ("as a policy matter, courts are

to encourage settlements, not litigation.").

Notwithstanding, Attorney Reeves stated, on the record, that all his and the Plaintiffs' extrajudicial efforts to resolve the matter were not even met with a response from the Defendant; in Attorney Reeves' words: their attempted contacts "fell into a black hole." Given, therefore, the Defendant's unresponsiveness, both prior to and after the commencement of this proceeding, it hardly seems out of the ordinary that Attorney Reeves would need to devote significant time to handle the matter. Accordingly, in accord with the itemized billing statement submitted by Attorney Reeves, the Plaintiff Paul Crow will be allowed damages, in the form attorney's fees, in the amount $3,642.40

In addition to attorney's fees, Plaintiffs also demand punitive damages. Section 362(k)(1) allows the court to make such an award in "appropriate circumstances." In assessing whether "appropriate circumstances" exists, courts should foremost consider the policy underpinning punitive damages which are meant to punish and to deter future wrongful conduct. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 fn. 27, 128 S.Ct. 2605, 2633, 171 L.Ed.2d 570 (2008). Analogously, punitive damages are not meant to compensate or enrich individual victims. *Id*.

On the issue of punitive damages, the court reiterates that the account statements sent by the Defendant to Paul Crow contained charges that were totally inconsistent with this court's loan modification approval order. For example, despite explicit language in this court's modification order – that the mortgage modification accounted for all arrears through December of 2009 – the Defendant continually sent the Paul Crow accounting statements showing a post-petition deficiency in excess of $25,000.00. Moreover, despite the repeated efforts of the Plaintiffs and their attorney to rectify the matter, the Defendant continued to send such account statements for a period of approximately one year. The Defendant then, despite receiving adequate notice, disregarded this adversary proceeding.

Congress adopted the Bankruptcy Code, in part, to enable debtors to obtain a fresh start. *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To fulfill this goal, creditors are expected to comply with both the Bankruptcy Code (*e.g.*, the automatic stay), and with lawful orders entered by the bankruptcy court thereunder. Most creditors do. It is apparent, however, given the record before the court, that the Defendant chose to ignore both the Bankruptcy Code as it regards the automatic stay, as well

as the loan modification approval order entered by the court. Under such circumstances, the court finds punitive damages to be appropriate here so as to coerce the Defendant into future compliance.

In *BMW of North America, Inc. v. Gore*, the Supreme Court held that in determining an award of punitive damages, these two considerations should be considered: (1) the degree of reprehensibility of the defendant's misconduct; and (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award. 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Of these considerations, the Court held that the "most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id*. For this consideration, the Supreme Court has explained:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (internal citations omitted).

In weighing the indicium outlined by the Supreme Court for an award of punitive damages, the court finds that an award of punitive damages in the amount of $11,000.00 is appropriate. The court reached this amount as approximately three times the attorney's fees awarded as compensatory damages. The court derives a multiplier of three as appropriate because a sophisticated mortgage servicer has ignored its obligations under, first, the statute, and second, a court order, with the third component arising from said servicer's failure and refusal to engage with Plaintiffs' counsel to try to resolve the problems raised without litigation, which has then been disregarded. In making this award, the court balances the following concerns. On the Defendant's side, the court notes that Paul Crow's actual damages are purely economic, consisting of attorney's fees in the amount of $3,642.40. There is, moreover, no indication that the

13

Defendant engaged in any malice, trickery or deceit as opposed to acting as a result of disorganization and incompetence. Conversely, there is no question that the Plaintiffs were in a financially vulnerable position at the time the Defendant was repeatedly sending Paul Crow inaccurate account statements. Furthermore, as stated, the Defendant has continually sought payment on a debt for which Paul Crow is not liable, disregarding both the Bankruptcy Code and this court's prior order.

### Determination of Balance of the Current Mortgage

In addition to statutory damages, Plaintiffs ask the court for an accounting to set the current balance on Mr. Crow's mortgage obligation to the Defendant at $115,000.00. Plaintiffs based this figure on this court's order of modification, and the fact that, since said order modifying the mortgage was entered, they have remained current on the mortgage obligation, including all escrow payments.

The court entering an order is in the best position to construe and interpret its own order. *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009). This court's order, approving the modification of the Plaintiffs' mortgage, incorporated into it these terms: (1) a new principal balance of $128,551.98; (2) an interest rate of 2.875%, to revert to 7.625% in January of 2015; (3) an amortization period of 294 months; and (4) a new principal and interest payment of $609.67 to begin on January 2010.

Based on these figures, together with this court's finding that the Plaintiffs have remained current on the mortgage note serviced by the Defendant, an amortization calculation shows that on June 1, 2013 (the 42nd month of the amortization schedule), the outstanding balance on the loan is $115,571.00 prior to the June payment being made, and $115,238.00 after the June payment is made.[7] Accordingly, this court's prior modification order will be treated as revised and updated so as to reflect these balances.

---

[7] http://calcxml.com/calculators/adjustable-rate-mortgage-calculator.

Under the Federal Rules of Evidence, a court may take judicial notice of a fact "that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201(b)(2). *See also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

**New Escrow Statement**

As their third form of requested relief, the Plaintiffs ask that the escrow account be deemed current and that the Defendant be required to provide a new statement of the escrow balance on a forward going basis. The escrow account is maintained by the Defendant to pay for accruing taxes and insurance. The court finds the Plaintiffs' request to be appropriate as part of an accounting.

On December 18, 2009, this court's loan modification approval order was entered. Pursuant to this order, Plaintiff Paul Crow was required to make a monthly escrow payment of $356.48. Since the time of this court's order, the he has remained current in paying the escrow account, a fact corroborated by an annual escrow statement sent by the Saxon Mortgage Company in September of 2011, showing a surplus of $1,504.33 in the account. In April of the following year, however, the Defendant sent to Mr. Crow an account statement showing a negative balance of $3,825.14 in the escrow account. One year later, this negative balance increased to $4,713.64, despite Plaintiffs paying the required escrow payment every month.

Based on these facts, it is obvious that something does not mesh with regards to the Defendant's accounting. The court finds it highly improbable, given the $110,000.00 value placed on their home, that the account could accrue an escrow deficiency of more than $5,000.00 in a period of approximately six months when the escrow account is only for the property's taxes and insurance. Consequently, to discern the proper balance of the escrow account, the Defendant shall be required to provide an accounting. As the basis for this order, the court relies on 11 U.S.C. § 105(a) which provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," which includes implementation of Debtors' cure and maintain Chapter 13 plan and resolution thereby of the pre-petition mortgage arrearages.

**Order Requiring Compliance**

As the final form of relief, Plaintiffs request the entry of an order from the court requiring the Defendant to comply with this court's order of modification and to apply all future payments in accordance with the modification order. The court, however, views this request as an inherent and an assumed component of this court's existing loan modification approval order. To the extent that the Defendant does

not comply with the modification order, or any other order entered by the court, Paul Crow may at that juncture bring an action under Bankruptcy Rule 9020 for contempt.

For good cause shown,

**IT IS ORDERED** that Amended Motion for Default Judgment filed by the Plaintiffs, Paul and Patricia Crow, [Doc. # 12], is hereby **GRANTED**. The court will enter a separate judgment in accordance with this memorandum of decision and order.

###